First case on for the regular appeal calendar is United States v. Filippo. May it please the court. My name is Alvin Enson and I represent the appellant Philander Filippo. With regard to our argument today, we would like to rely on our brief for the first issue which is presented in the brief, which is the issue that goes to the hearsay testimony being plain error unless the court has any specific questions regarding that and would prefer to argue, your honors, the second and third issues which relate to the sentencing. Our position on the sentencing issues, your honor, is that the district court erred by increasing Mr. Filippo four levels for a leadership adjustment and it's our position that the evidence did not support the finding that the court made with regard to the number of initially under 3B1.1, it indicates for the four level enhancement to apply, you must have five or more participants in a criminal offense or be otherwise extensive or two levels otherwise if you're a manager or a supervisor. And the first issue to confront is whether or not there was a determination made as provided by 3B1.1 that there were in fact four, pardon me, five or more individuals who were involved in the criminal activity. As was indicated in Judge Sweet's sentencing memo, it is clear that he treated both the 2013 and 2014 as two separate conspiracies and it would be our position that those two conspiracies, neither one of which would have had the requisite number of five participants. There was no specific finding in his sentencing memorandum that there was five participants. There was no finding in the pre-sentence investigation report that was allegedly adopted that there were five participants. And in fact, as was pointed- The district court adopts the findings that were made in the PSR. Yes. Didn't the PSR list six people that were involved in it? Actually not, Your Honor. The PSR listed a number of initials that were CC1, CC2, CW, and then it indicated additional individuals beyond that. But if you do or treat it as Judge Sweet did as two separate conspiracies and we look to the Radjaradam decision of this court, it is clear that this circuit has not yet taken a position about whether or not you can combine through the two separate conspiracies the number of individuals that are participating in order to reach the number of five. It's kind of interesting in reading Radjaradam that the court said that we don't have to get to the issue of whether or not we can combine them and apparently it's an issue that hasn't been determined because in the first conspiracy in Radjaradam, they found that there were six participants. In this particular case, in 2012, you have one supplier and in- I'm sorry, 2013. And in- I'm sorry, 2012, one supplier and in 2013, one supplier. They're separate and distinct from one another and that brings both of those particular conspiracies under five individuals even including adding Mr. Filippo. So it would be our position that there aren't five participants in either of the two conspiracies. And it only works if you combine the two. That's correct. Only works. And they're completely different sellers or providers of cocaine in 2013 than there is in 2014. But even- There's no distribution network. There's no distribution network. The distribution network is Mr. Ventura, I assume. And everybody else involved in this case is a government informant. The transportation organization is a government informant. The person that goes looking for the sources with Judy Gonzalez is a government informant. So they fail on otherwise extensive because the extensiveness of this particular network is the government provided individuals who are doing transport and providing sources. But even if the court were to combine the individuals, it would still fail because of the fact that they haven't established the facts under Application Note 4, nor did the court make specific findings under Application Note 4 with regard to the factors that you use to determine if you're a leader or organizer. Those are the exercise of decision-making authority, the nature of the participation, the recruitment of accomplices, and the right to a larger share of the proceeds and the degree of participation in planning. In this particular case, the only thing that the government argues, for example, with regard to recruitment of accomplices is that Mr. Filippo allegedly co-recruited Ms. Montes. If we look at paragraph 9 of the PSR, I don't know if you have it in front of you, but you have Filippo, you have CC1, co-conspirator 1, I would ‑‑ that must be Gonzales, and then there's reference to co-conspirators 2 and 3. I have no idea who they are. And then you go to Carter. And then there's also a reference to a Colombian police officer. So if indeed CC2 and CC3 are involved, then that would be 5. Your Honor, I agree, maybe. But if Your Honors look at Carter, which talked about what's necessary in order to establish the leadership adjustment, in Carter they say you've got to give specific facts so that you don't have to sit here, Your Honor, and say, well, CC2, CC3, there should have been names given, people identified, and we could have been in a better position to argue it. Instead, we have a broad order, just like the order in Ware and Carter, which was rejected by this Court, and my time has run out, and I've reserved, I believe, three minutes for rebuttal. Thank you. Ms. Riley? Good morning, Your Honors. May it please the Court, my name is Catherine Riley, and I represent the United States on appeal, as I did below. Unless the Court has questions about the first issue raised in the brief as to the hearsay question, I'll move right to where appellant's counsel began, and that's with the leadership enhancement under 3B1.1. Your Honors, I think an important point to start with here is that there is nothing in Judge Sweet's sentencing opinion that suggests that he treated the 2012 and 2013 cocaine transactions as separate conspiracies. Rather, if you look to the offense conduct section of Judge Sweet's opinion, it's very clear that he considered them as one conspiracy, and that's how the case was charged and presented at trial. He specifically sets forth in that offense conduct section of his opinion six participants in that conspiracy. He refers to them as CC1 and CC2, that's Judy Gonzalez and John Freddy Potus Joris, and then he talks about two sellers in Colombia. They're referred to as CC2 and CC3 in the PSR, Maria Restrepo and her ex-husband Jaime, and he further talks about the co-conspirator directed to receive the drugs, Junior Ventura, and the defendant. That's six individuals, and he clearly outlines their role in the offense conduct section of his sentencing opinion. But, Your Honor, he did more than that. He also explicitly adopted the PSR not just in the opinion but also at the sentencing hearing, and that makes this case very different than some of the cases relied upon by the appellant, Carter, for example, where the court concluded that the PSR lacked sufficient facts to understand the basis for the imposition of the enhancement. Here, the PSR was extremely detailed, both as to the participants in the conspiracy and as to the conduct that suggested the imposition of the enhancement was appropriate. The PSR referred to three co-conspirators, CCs 1, 2, and 3, as well as to Junior Ventura and John Freddy Potus Joris by name, and, of course, the defendant, again, six. And I would suggest to the court that the fact that the PSR used CC1, CC2, CC3, which is a common practice, doesn't make it any less clear what the basis of the imposition of the enhancement was, particularly when the record is considered as a whole, and the fact that Judge Sweet is the judge who presided over the trial in this case and clearly was familiar with the facts is also considered. But I think it's important also to look at the detail that's in the PSR and in Judge Sweet's sentencing opinion about the defendant's underlying conduct and the fact that he acted as an organizer and a leader of this single conspiracy. The sentencing opinion talks about the fact that How do you respond to the defendant's argument that they should not be considered as one conspiracy, but they have to be evaluated separately, and when you look at them separately, you don't have five participants? Your Honor, I would respond in two ways. The first is to note that the standard here on review, of course, is deferential. This is a procedural challenge, and the standard is whether Judge Sweet was aware of the statutory requirements and applicable ranges and whether anything in the record indicates a misunderstanding. I would suggest there's nothing in the record to suggest that here, and it's clear he considered it as one conspiracy. But I'd also suggest, Your Honor, that that's the appropriate conclusion on the merits. The fact that there were two different sellers doesn't mean that this isn't a one-drug conspiracy. It had the same leader, the defendant, a number of the same participants. Ms. Gonzalez and Mr. Ventura participated in both the 2012 and 2013 deals and ultimately the same goal. There was evidence introduced at trial. The goal was to purchase cocaine in Colombia and import it to the New York area where a higher profit could be generated, a profit that was largely going to flow to the defendant appellant who was going to purchase the majority of the drugs. Was it tried to the jury as a single conspiracy? It was, Your Honor. So with that in mind, I think this is clearly a one-conspiracy case, and Judge Sweet was right to find that, and he was further right to find that the defendant acted as a leader or organizer, both in terms of what he set forth in his findings and then on the merits as well. The PSR, which was adopted, again, in the opinion and at the hearing, used phrases like Filippo was the leader. He provided the money to purchase the cocaine. He made arrangements and decisions. And that was supported by the evidence at trial. There was extensive testimony from cooperating witnesses as well as recordings and e-mails which showed the defendant talking to his co-conspirators and directing how they were going to negotiate a price, how much they were to buy, how they were to make arrangements for transport. That's precisely the kind of conduct that falls under the 3B1.1 standard. Ms. Riley, if you take the defendant's, the appellant's arguments here and concede them for a moment, which I'm not asking you to do, what difference would that have made in the sentencing guideline level, given that he got a below-at-least guideline calculation sentence? Your Honor, it would have reduced his guidelines level, of course, four levels. I don't know precisely what range that would have put him at. I think it would have, what I would suggest is, of course, that it could have made a difference if Judge Sweet had then chosen to depart further down from the guidelines. It's difficult to know, of course, in that different set of circumstances what Judge Sweet would have considered appropriate. But I think here the guidelines were correctly calculated and the enhancement properly applied. And then Judge Sweet, as he was supposed to do, considered all of the other factors and issues raised under 3553A and set forth by the defense. So the substantive challenge to the sentence, I would suggest, is also ill-founded, given that Judge Sweet considered the arguments put forth before him, laid out the 3553A factors he had considered, and then departed 24 months below the applicable guidelines range. Unless, Your Honors, have... I have a question. Yes. There were two counts. What was the difference between the two counts? I know one was straight distribution, the other one was importation. But was there a factual difference? Were both transactions covered in count one? Yes, Your Honor. One was a narcotics distribution conspiracy and one involved the importation of the cocaine into the United States. So the facts underlying the two counts were slightly different in the sense that there are different elements to the two counts, but they both covered the relevant time periods and both deals, and that's how they were argued to the jury at trial. Both covered both transactions. That's right. Okay. So unless Your Honor has any further questions, the government would urge that the conviction and sentence be affirmed and would rest on our submission. Thank you, Ms. Riley. Mr. Anton. To respond briefly to Your Honor's question, if you remove the leadership adjustment, as we pointed out in our brief, it would have reduced the guidelines to 151 to 188, both of which would be lower than the 211. Secondly, Your Honors, the idea of taking the position that CC1 and CC2 and CW are sufficient under the law of this circuit to establish the participants with specific ---- CC1, CC2, that's the way it is in the PSR, but the evidence at trial identified who those individuals were, correct? Not by those letters. I mean, the individuals that may have been involved. Sweet tried the case, so when he read the PSR, he knew. True. But what the appellate court ---- Do you agree or disagree that the case was tried as one conspiracy? I agree that it was. But I would also point out that Judge Sweet treated it as two in his sentencing memorandum. He said we find he was a leader in 2013 and the 2012 conspiracies. So he subdivided it. But in Ware, Your Honor, which is a Second Circuit case, it clearly indicated that the findings of the sentencing court must be sufficiently specific to permit meaningful appellate review. It is not enough for the court to repeat or paraphrase the language of the guideline. And in Ware, what they did was they said he sold heroin to ten different individuals. And after all, the judge tried that case. Same situation here. There's no other identification for you other than the putting of names to CC1, CC2, and CW by the government. Then you take a look at what the leadership roles were, and the only one that the government takes umbrage with in its brief is the recruitment of Ms. Montea, who they say Mr. Filippo participated in that recruitment. Actually, that's not what happened. The record is clear. Montea reported an approach by Judy Gonzales as an informant. The government instructed her to deal with Gonzales and make the case. Gonzales then talks to Montea, and it's only after — Gonzales was doing it for Filippo. Not necessarily. The only thing this record shows that Filippo actually did or decision that Filippo actually made was to spend the money and be the financier. In fact, on the 2014 or — yeah, the 2000 — the second event, he tells Gonzales specifically, don't deal with Montea. And Gonzales chooses to ignore that, deals with Montea. The first time, he never sends them to Panama to go find a source. He merely says, we don't have a source. They do that at Montea and Gonzales' instructions. There's no leadership function performed by — Having told her not to deal with Montea, right? Correct. He then continues to participate in the process. But the point is the decisions are not being made by him, which is what you need for the leadership adjustment. The decisions about who to deal with, how to deal with it, find the source, negotiate everything, was all done by Gonzales. All they showed was that Filippo provided the money. Thank you very much, Your Honors, for your time. Thank you, Mr. Anton. Thank you, Ms. Riley. We will reserve decision.